**UNITED STATES, Appellee,**

**v.**

**Paul B. BONNEAU, Defendant, Appellant.**

**No. 91–2269.**

United States Court of Appeals, First Circuit.

Heard June 4, 1992.

Decided July 21, 1992.

Annemarie Hassett, Federal Defender Office, for defendant, appellant.

Mark W. Pearlstein, Asst. U.S. Atty., with whom A. John Pappalarado, Acting U.S. Atty., was on brief for appellee.

Before CYR, Circuit Judge, RONEY,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

On April 2, 1991, a jury convicted the defendant-appellant Paul Bonneau of attempted tax evasion in violation of 26 U.S.C. § 7201. The district court on June 11, 1991, sentenced Bonneau to three years of probation with conditions. Bonneau now appeals his conviction and we affirm.

Bonneau is a boilermaker who has spent many years in the construction of steel structures, working for different employers on short or long-term projects. From 1966 through 1979, Bonneau regularly filed tax returns and paid taxes and regularly filed form W-4 certificates with his employers stating how many exemptions he claimed. The number of exemptions claimed on the W-4 form advises the employer how much of the employee's wages should be withheld from the employee's pay (and remitted by the employer to the Internal Revenue Service) as a down payment on the employee's income taxes.

* Of the Eleventh Circuit, sitting by designation.

In late 1979, Bonneau was working in Nevada and heard from co-workers about an organization called Stop Taxing Our People ("STOP"). Bonneau attended one of its seminars. As a result of the seminar, Bonneau sought literature from an organization called the Golden Mean Society, which Bonneau described at trial as a group that explains tax laws to individuals and advises them on what is legal and not legal in relation to taxes. Based on the seminar, the literature, and other information he obtained, Bonneau concluded—according to his trial testimony—that he was not required to file income tax returns or pay taxes, and from about 1980 onward he ceased either to file or to pay. He also eliminated withholding of taxes by his employers by filing W-4 forms stating that he was exempt from withholding.

On April 12, 1990, Bonneau was indicted for two counts of willfully attempting to evade taxes in violation of 26 U.S.C. § 7201. Count one charged that Bonneau failed to file an income tax return or pay taxes for calendar year 1983 and had submitted false W-4 forms claiming to be exempt from withholding, even though he had in fact received a taxable income of approximately $27,000 during 1983 and owed taxes in excess of $5,000. Count two charged a similar offense for calendar year 1984 when Bonneau had a slightly larger income and owed slightly more in taxes.

At trial Bonneau did not dispute that he owed taxes for both of the calendar years in question or that he took steps to prevent taxes from being withheld or paid, but he did deny that his actions were willful. Under *Cheek v. United States,* — U.S. —, 111 S.Ct. 604, 610-11, 112 L.Ed.2d 617 (1991), the willfulness element of the crime charged can in some circumstances be defeated where a taxpayer wrongly but sincerely believed that no tax was due. *Cheek* holds, however, that while a misunderstanding of the tax laws may negate willfulness, the taxpayer's views about the validity of the tax statutes are not relevant to willfulness. *Id.* 111 S.Ct. at 613.

Bonneau testified that his own study after the 1979 seminar had persuaded him that a working man's wages were not "income" under the Internal Revenue Code's definition (*see* 26 U.S.C. § 61) because wages did not represent a gain to the worker but merely an exchange of labor for payment. During Bonneau's direct testimony, he was allowed to explain his view and how he came to it and to introduce certain documents, including literature from the Golden Mean Society, on which he relied. The trial judge initially excluded as irrelevant under *Cheek* any testimony by Bonneau that he believed that the tax laws were unconstitutional, and the judge ordered that certain exhibits be redacted to remove references to the validity of the tax laws.

On cross-examination of Bonneau, the prosecution asked questions and introduced documents in order to show that Bonneau's true basis for failing to pay taxes was not any misconstruing of section 61 but rather was Bonneau's belief that the tax laws were unconstitutional, philosophically objectionable, or both. In this effort, the government introduced over a vehement objection exhibit 87, a 1986 letter from Bonneau to the Internal Revenue Service, objecting to certain penalties and including references to Bonneau as "a white male citizen" and "a free white male citizen." The letter is reprinted as an appendix to this opinion.

The jury convicted Bonneau, and the district court sentenced him to three years' probation, conditioned on the filing of returns and payment of taxes. This appeal followed. Bonneau now offers three different grounds for reversal.

1. Bonneau first argues that the trial court unduly restricted him in presenting his defense by excluding any testimony that Bonneau believed the tax laws to be unconstitutional and by redacting exhibits—such as the Golden Mean Society pamphlet—to remove references to the Constitution. Under *Cheek v. United States,* a taxpayer's mistaken reading of the tax laws may negate willfulness in a tax evasion case, but "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness, need not be

heard by the jury, and if they are, an instruction to disregard them would be proper." 111 S.Ct. at 613. Whatever a rigid logician might say, *Cheek* draws a practical distinction between "innocent mistakes caused by the complexity of the Internal Revenue Code" (*id.* at 612) and constitutional and philosophical objections that taxpayers may sincerely hold but are likely to know have been rejected by the courts. In any event, the line drawn by *Cheek* is controlling and the district court properly sought to follow it.

Without making a frontal attack on *Cheek,* Bonneau argues on appeal that the trial court overextended *Cheek* by mechanically excluding all defense references to the Constitution and by redacting all such references in defense exhibits. Bonneau contends that the Constitution is legitimately pertinent to the issues in this case in at least in two ways. Specifically, Bonneau asserts that the language in the Sixteenth Amendment ("The Congress shall have power to lay and collect taxes on incomes, from whatever source derived . . .") was studied by Bonneau as a gloss on section 61 of the Internal Revenue Code ("gross income means all income from whatever source derived, including (but not limited to) the following items. . . ."). Further, says Bonneau, his study of the constitutional validity of the tax laws provided evidence of his sincere attempt to grapple with the legal issues, thus tending to bolster the sincerity of his belief that wages were not income under section 61.

■ We agree with Bonneau that in principle *Cheek* does not require that every constitutional reference be omitted or deleted in a tax evasion case; such evidence may indeed be relevant for some purpose other than to show that the defendant thought that the tax laws were unconstitutional. Still, trial judges have ample latitude under Fed.R.Evid. 403 to weigh the importance of the evidence against the risk of jury confusion, and confusion is a risk where, as here, the most obvious use of such constitutional references is forbidden by *Cheek.* In this case, the trial judge denied the government's pretrial request for a blanket exclusion of all evidence concerning Bonneau's views about the constitutionality of the tax laws and sought to address objections to testimony or exhibits as they arose at trial. Our review of the transcript of Bonneau's testimony and exhibits in question persuades us that the trial judge imposed only reasonable redactions and did not unfairly handicap the defense.

At oral argument we asked defense counsel to point out the most egregious example of undue handicapping and counsel pointed to a pamphlet of the Golden Mean Society offering a host of observations concerning the tax laws, constitutional rights, politics and taxpayer strategy. In this exhibit, the trial court deleted a paragraph of the pamphlet asserting that tax returns cannot be filed without waiving constitutional rights but left in a paragraph asserting that "payment for services is an even exchange—if the value of the labor is the same as the value of pay, there is no *profit* or *gain* to constitute the 'income' mentioned in the 16th Amendment." Not only did the district court employ reasonable discretion in redacting exhibits but the trial testimony given by Bonneau and the exhibits he introduced certainly gave the jury a fair understanding of his position that wages were not income and provided the jury with written materials on which he might have based such a judgment.

■ In addition to objecting to redactions, Bonneau contends that the trial court erred in preventing him from testifying about Supreme Court rulings described by the speaker who addressed the STOP meeting that Bonneau attended in 1979. The district court was apparently concerned that Bonneau's version of the decisions could be misunderstood by the jury as representing the actual state of the law. The government counters Bonneau's claim of error with a string of cases showing that courts often exclude from evidence copies of statutes, constitutional provisions, and decisions, which might invite the jury to substitute its own view of the law for the judge's instructions. *See, e.g., United States v. Willie,* 941 F.2d 1384, 1395–97

(10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). *But see United States v. Powell,* 955 F.2d 1206, 1213–14 (9th Cir.1992) (suggesting that *Cheek* may require admission of legal materials in some circumstances). What is in issue here, however, is not the admission of written decisions but testimony by the defendant as to what he was told the decisions held. Such testimony could bear directly on the defendant's state of mind, and the risk of confusion may be lessened because the jury takes no written decision into the jury room to ponder.

The importance of such testimony can, of course, be weighed by the trial judge against any residual risk of confusion, and if the trial judge excludes the evidence, the ruling can be reviewed for abuse of discretion. Fed.R.Evid. 403. But this is not a subject that we need to pursue in the present case because Bonneau's trial counsel made no offer of proof in the trial court to establish the substance of the testimony. Since we do not know what Bonneau would have claimed he was told about the Supreme Court decisions, there is nothing in the record to show that important admissible testimony was excluded by this ruling. A party may not claim that evidence was wrongly excluded unless the substance of the evidence was made known to the trial court by offer or was apparent from context. Fed.R.Evid. 103(a)(2); *Earle v. Benoit,* 850 F.2d 836, 847–48 & n. 13 (1st Cir.1988). Both the letter and purpose of the rule would be frustrated were the claim of error to be allowed now.

2. Bonneau's second ground for reversal also derives from *Cheek.* After persuading the trial court to limit the defense's direct examination by excluding evidence to show that Bonneau believed the tax laws to be unconstitutional, the government itself on cross-examination of Bonneau sought to show that he objected to the tax laws on constitutional and philosophical grounds. In this court, Bonneau argues that evidence of his constitutional beliefs had already been ruled irrelevant by the trial court. Bonneau further contends that he could and did believe *both* that the tax laws were unconstitutional and that they did not classify wages as income; thus, he argues, there is no inconsistency between the two views and so no impeachment value in the government's evidence. Finally, Bonneau objects that barring his constitutional beliefs on direct examination and then allowing the government to elicit them on cross made him look dishonest in the eyes of the jury.

The first two objections can readily be put aside. Under *Cheek* a defendant charged with tax evasion cannot testify to his view that the tax laws are unconstitutional because, under the substantive law laid down by *Cheek,* this belief even though sincere does not negate willfulness. Yet when the defendant takes the stand professing to believe that wages are not income under the tax laws, the prosecutor is entitled to prove that the defendant held other beliefs—whether constitutional or philosophical—that persuaded him not to pay taxes but do not negate willfulness under *Cheek.* As for Bonneau's claim that there is no inconsistency, it is surely true that the defendant could hold both sets of beliefs at the same time, but the force and persistence of the defendant's views on the constitutional issue certainly were evidence for the jury to consider in deciding what he actually believed.

There is more weight to Bonneau's claim that the sequence of proof posed a risk of unfairly impairing his credibility. It would, for example, have been improper for the prosecutor, having limited the direct examination, to argue in summation that Bonneau should not be trusted as a witness because he did not mention his constitutional beliefs until they were drawn out of him on cross-examination. Of course, the prosecutor here made no such argument in closing, but the defense is now suggesting that the jury may have drawn such an inference on its own.

Whatever force the suggestion might otherwise have, it is answered by the trial judge's handling of the problem. When this objection to the government's cross-examination was made at trial, the judge overruled the objection but declared that

under the "principle of completeness," the defense would now be permitted to develop more fully Bonneau's view that the tax laws were unconstitutional, so that the jury could have a full and accurate picture of Bonneau's beliefs. Moreover, the trial judge said to defendant's trial counsel:

> What this comes down to is an argument on the order of proof in trial, and I think it's appropriate for me to explain this to the jury and tell them that I prohibited the introduction of any evidence at the time of the Government's case and in cross-examination by you [sic] with respect to evidence regarding beliefs in unconstitutionality of the tax laws, and so this comes into the case only as a result of the defendant's having elected to testify rather than standing on his right to remain silent, and then the evidence becomes relevant solely for impeachment purposes. I'll explain all that if you want me to, but I don't think I can exclude the evidence.

The trial court's sensible offer to explain that it had itself limited the defendant's testimony gave the defendant the chance to erase any mistaken inference that Bonneau had deceived the jury in his direct testimony. Apparently for tactical reasons, defense counsel at trial did not ask for the instruction to be given, nor did counsel accept the invitation to develop further Bonneau's constitutional views on redirect (an understandable choice since Bonneau's constitutional beliefs could not themselves furnish a defense). Nevertheless, the defense had the opportunity to obtain the instruction and develop the issue, and this seems to us to conclude the matter for purposes of appeal.

█ 3. The third and most troubling claim urged by Bonneau on appeal relates to a specific document, exhibit 87, reprinted as an appendix to this opinion. Exhibit 87 is a letter written by Bonneau to the Internal Revenue Service in June 1986, objecting to $500 in penalties imposed on him for submitting false W-4 forms in each of two earlier years. The letter objected to the penalties, made certain references to the Constitution, and included the following language:

> I am a white male citizen of these great United States and still believe I have certain unalienable rights....
>
> I have never knowingly given up any of my rights as a free white male citizen of these great United States.

On cross-examination of Bonneau, the prosecutor had him identify the letter and concede that, in protesting the penalties, he nowhere in the letter said anything about wages not being income. The prosecutor then referred in his cross-examination to the phrase, "I am a white male citizen." The defense objected both to the oral quotation and to the prosecutor's subsequent offer of the letter into evidence. Pointing to the "white male citizen" language, defense counsel objected that it could be construed as racist and argued that its prejudicial force far outweighed any probative value it might have. When the trial judge overruled the objection, defense counsel then asked that the two "white male citizen" references be redacted. The trial judge declined to do so and admitted the letter in full, allowing both paragraphs containing the reference to be read to the jury. Shortly afterwards, the court recessed for the weekend.

On the following Monday, Bonneau's trial counsel filed in open court a written motion to exclude exhibit 87 and any further evidence relating to Bonneau's constitutional views. Arguing that such evidence was irrelevant, the motion repeated Bonneau's claim that the prejudicial effect outweighed any legitimate value of the letter, "especially given the fact the jury includes one black man and seven women." In an oral colloquy, defense counsel argued again that at a minimum the objectionable phrases should be redacted. The district court declined to redact, finding that the evidence was relevant and that under Fed. R.Evid. 403, its relevance was not substantially outweighed by the risk of unfair prejudice. In closing argument, the prosecutor mentioned exhibit 87 along with other documents, stating: "He [Bonneau] even talks about the fact that he's a free, white male as if that somehow has some bearing on his tax liability, but he never says that wages are not income."

The "white male" references to one side, there is no proper objection to the letter. It is true that this letter is directed to the penalties rather than the income tax, that it was written several years after the tax years in issue under the indictment, and that the constitutional objections in the letter can be read primarily as procedural objections. The fact remains that the prosecutor was entitled to argue, and the jury to consider, the inference that Bonneau's failure to make any reference in the letter to his alleged belief that wages are not income—in the face of the penalty assessments premised on his underlying tax liability—tended to undercut his trial testimony that he held such a belief. But to hold the letter to be relevant does not fully answer Bonneau's objection on this appeal, for the thrust of the prosecutor's argument could have been preserved by admitting the letter while redacting the "white male" phrases, removing any risk of prejudice.

In our view redaction would certainly have been a permissible course. Although not openly an attack on blacks or women, Bonneau's language has overtones that could have offended jurors, and not only black or female members of the jury. Any threat to a fair trial is a matter of concern, whether or not the threat is founded in the defendant's own incivility. Nor do we accept the government's suggestion that any error in admitting the letter was harmless. It is true that the jury may have been more than usually skeptical of Bonneau's sincerity in claiming that wages are not income since the government's evidence also indicated that he did not pay taxes in a year where unemployment compensation paid to him exceeded the taxable minimum. But it would stretch the harmless error concept too far to apply it in this case in which the merits turned on defendant's state of mind and Bonneau offered testimony consistent with his professed belief.

Two related considerations persuade us to affirm. The government has not argued the point directly, but in our view the letter's "free white male" references are themselves relevant evidence tending to undercut at least to some degree Bonneau's claim that he did not pay taxes because he believed that wages were not income. The references, in the context of the letter and of other exhibits on which Bonneau relied, could be seen by the jury as part of a pattern of rhetoric suggesting constitutional and philosophical objections, rather than any technical misreading of the Internal Revenue Code. This is doubtless what the district judge had in mind when, in addressing the request for redaction, he said that "one may read the letter as using those expressions as a part of a view of the constitutionality issue...." The phrases did not contribute very much to the government's case but we cannot find that they were irrelevant.

Once the relevance of the phases is accepted, the standard for exclusion at trial and the standard of appellate review combine to favor affirmance of the district judge's ruling. Fed.R.Evid. 403 provides that relevant evidence may be excluded where its probative value is "substantially" outweighed by the danger of unfair prejudice. When it comes to making that appraisal, the district judge has the special advantage of sitting in the courtroom and hearing the evidence face to face with the jury. The government properly cites to us *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1340 (1st Cir.1988), for the proposition that "only rarely—and in extraordinary compelling circumstances" should this court "reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." While the district court might have struck the balance differently, this is not a case for reversal.

For the reasons stated, the judgment of the district court is

*Affirmed.*

Paul Bonneau
P.O. Box 742
E. Freetown, MA. 02717
June 21, 1986

Chief Taxpayer Assistance
Internal Revenue Service Center
Andover, MA. 05501

Dear Person,

This is in reference to your two letters sent to me dated June 16, 1986. You assessed me $500.00 for Dec. 3 1982 and also $500.00 for Dec. 31, 1983.

Please send me a copy of section 6682 of the Internal Revenue Code. Also any law which gives you the right to assess me for any amount without due process of law.

I am a white male citizen of these great United States and still believe I have certain unalienable rights, that among these are Life, Liberty and the pursuit of Happiness. These rights are guaranteed to me by the Constitution of the United States. Under Amendments IV and V of the United States Constitution " The right of the people to be secure in their persons and effects, against unreasonable searches & seizures shall not be violatec... but upon probable cause" Probable cause can only be determined by a jury. I have not been before a jury.

I have never knowingly given up any of my rights as a free white male citizen of these great United States. If I have, please explain where anc when I did such a think and I will try to make it right, because it was never my intention, of doing such a thing.

How can you become Judge, Jury and Executioner. If this is to be, we the people have better take a good look at what we call FREEDOM.

This is our (us as a free people) reasonable cause to contest this Unconstitutional assessment. We as a free people not only have the right to correct the wrong here but we have an obligation to do everything in our power to protect the law of the land, The United States Constitution. Were would we be without it, Please help to keep us all a free people.

Constitutionally Yours,

Paul Bonneau

Paul Bonneau

copy to C/B 1/7/86

IRS 6/21/86
page 1