TORRUELLA, Circuit Judge
(Dissenting).
We have before us the second round of this case. See United States v. Azubike, 504 F.3d 30 (1st Cir.2007) [hereinafter “Azubike I ”]. In Azubike I, we vacated the conviction and remanded the case for retrial because the prejudicial statements of the prosecution invalidated the outcome. By retrying appellant, the government has now had two shots at proving beyond a reasonable doubt all of the essential elements of the crimes charged. As in 4a-bike I, whether Azubike “knowingly and intentionally” possessed a controlled substance under 21 U.S.C. § 841(a) is the linchpin of this controversy. In my view, the government’s evidence once again does not permit a rational jury to find this essential element beyond a reasonable doubt. In addition, and unique to the instant case, the district court gave a fatal willful blindness instruction, one which, in itself, is sufficient to flaw Azubike’s latest conviction. For these reasons, I respectfully dissent.
A. Sufficiency of the Evidence
In my dissenting opinion in Azubike I, I concluded that the government failed to establish Azubike’s criminal scienter beyond a reasonable doubt. 504 F.3d at 42-43. A review of the record in the present appeal leaves me in no better position to find that the government has met its constitutional burden in this respect. See United States v. Nieves-Castaño, 480 F.3d 597, 601 (1st Cir.2007) (“[Kjnowledge that one is guilty of some crime is not the same as knowledge that one is guilty of the crime charged.” (emphasis in the original)); see also United States v. Cruz, 363 F.3d 187, 198-99 (2d Cir.2004) (holding that there was insufficient evidence to conclude defendant had specific knowledge that drugs were the object of the transaction); United States v. Cartwright, 359 F.3d 281, 286, 290-91 (3d Cir.2004) (holding that the government failed to show sufficient evidence that lookout knew transaction involved drugs even though he knew the transaction was illegal); United States v. Fitz, 317 F.3d 878, 882-83 (8th Cir.2003) (holding that despite giving false name and other factors showing defendant knew transaction was probably not legitimate, evidence was insufficient to conclude knowledge of presence of drugs); United States v. Thomas, 114 F.3d 403, 405-06 (3d Cir.1997) (holding evidence insufficient to conclude defendant had knowledge that drugs were involved in the transaction despite his knowledge that the transaction was illegal). In fact, if anything, I am even more skeptical than in Azubike I that the government met its burden this second time around, for I find that the record is *70 now factually weaker. It appears that the government was somewhat complacent in its presentation of evidence in the present case, perhaps being lulled into that condition by the outcome in Azubike 1.[6]
Specifically, I disagree with several arguments the majority makes in support of its sufficiency holding. First, I consider neither Azubike’s “close association” with Oki and Ike, nor the fact that Azubike was entrusted with a briefcase that was found to contain drugs, to be probative of Azubike’s knowledge of the contents of the briefcase under the circumstances of this case. The majority maintains that the jury could use its “common-sense” to conclude that Azubike was not ignorant of the contents of the briefcase because a large drug operation trusted him to transport a significant quantity of heroin. However, in this particular drug operation, the jury should not have been able to rely on this common-sense conclusion because Solomon entrusted Mukasa, who also had no knowledge of the true nature of the shipments, to receive and distribute the “unusually heavy” briefcases. In addition, the evidence shows that Solomon made substantial efforts to conceal relevant aspects of the operation from those upon whom he relied to distribute the briefcases. Given Solomon’s penchant for secrecy, evidence of frequent discussions between Azubike and Oki and Ike is minimally probative of Azubike’s knowledge of the briefcase’s contents.
Second, I also disagree with the majority that the modus operandi of this criminal enterprise would permit a jury to conclude beyond a reasonable doubt that Azubike knew he was transporting drugs. A modus operandi involving multiple couriers, briefcases with secret compartments, and a meeting in the parking lot is consistent with other forms of high-value contraband activity such as smuggling diamonds, gems commonly smuggled from Africa into the United States. See generally United States Government Accountability Office, GAO 06-978, Conflict Diamonds: Agency Actions Needed to Enhance Implementation of the Clean Diamond Trade Act (2006) [hereinafter GAO Diamond Report].
Lastly, I disagree with the majority’s reliance on the conversation between Azubike and Mukasa, where Azubike states that “You don’t have to say that on the phone.... Don’t say nothing more, don’t say anything” in response to Mukasa’s comment that Mukasa’s friend did not “know much about this stuff.” Even when viewed in the light most favorable to the government, this exchange would not permit a rational juror to infer that Azubike knew what the “stuff’ was. Rather, when read in context, this exchange merely reflects Azubike’s knowledge that the “stuff’ was illegal and indicates his reluctance to discuss the illegal activity on the phone. *71 See Cruz, 368 F.3d at 198-99; Fitz, 317 F.3d at 882-83.
The unmistakable reality is that the majority assumes too much, and places the bar that the government must clear at too low a level. Although the government is allowed to prove by circumstantial evidence that Azubike knew that the briefcase in question contained drugs, it only succeeded in establishing that Azubike knew something illegal was afoot. Any conclusion by the jury beyond that, specifically imputing to Azubike knowledge of the contents of the briefcase, was the product of pure speculation (influenced, perhaps, by an improper willful blindness instruction, which I will discuss infra). This is particularly true when one considers that the burden is proof beyond a reasonable doubt. See United States v. Idowu, 157 F.3d 265, 270 (3d Cir.1998) (holding that there was insufficient evidence that the object of the transaction was drugs and that “no reasonable jury could have concluded that the government had met its burden of proof, which requires proof beyond a reasonable doubt”); United States v. Olivo-Infante, 938 F.2d 1406, 1409 (1st Cir.1991).
As I stated in Azubike I, the evidence the government presented in this case would have been just as consistent with that of a case involving the smuggling of diamonds or any other high-value contraband from Africa. 504 F.3d at 43. Lest this assertion be considered also in the realm of speculation, I suggest that diamond smuggling from Africa into the United States, one of the world’s largest consumers of industrial and gem grade diamonds, is a reality which has been confronted by our government with considerable attention and limited success. See generally GAO Diamond Report.
It may be that the majority opinion is part of an inexorable trend in the relaxation and degradation of the constitutional standards that are now to be applied in criminal proceedings involving controlled substances. If that is the case, it is one parade in which I am not willing to march. See generally Kevin Jon Heller, Note, Whatever Happened to Proof Beyond a Reasonable Doubt? Of Drug Conspiracies, Overt Acts, and United States v. Shabani, 49 Stan. L.Rev. Ill, 142 (1996) (noting that “[i]n case after case involving drugs, the courts have whittled away vital protections for the accused” and that “the standard of proof beyond a reasonable doubt [should be added] to the long list of vital protections sacrificed in the name of the War on Drugs”) (internal quotation marks omitted); see also Tucker v. Palmer, 541 F.3d 652, 671 (6th Cir.2008) (Keith, J., dissenting) (noting the court’s responsibility to ensure “the constitutional guarantee [of proof beyond a reasonable doubt]” and that, in that case, “[t]he majority turn[ed] a blind eye to this basic constitutional responsibility and undermine[d] the concept of equal justice under the law”); United States v. Mangual-Corchado, 139 F.3d 34, 49 (1st Cir.1998) (McAuliffe J., dissenting in part) (“ ‘[T]he sufficiency of the evidence warrants particular scrutiny when the evidence strongly indicates that a defendant is guilty of a crime other than that for which he was convicted, but for which he was not charged.’ ”) (quoting United States v. Salamanca, 990 F.2d 629, 638 (D.C.Cir.1993)); Hon. Jon O. Newman, Beyond “Reasonable Doubt,” 68 N.Y.U. L.Rev. 979, 989 (1993) (“[I]n the federal courts, the primary expositors of federal requirements, we have insisted that juries be instructed that they must be persuaded beyond a reasonable doubt, but we have not insisted on meaningful observance of this standard as a rule of law for testing the sufficiency of the evidence.”).
*72 The evidence was equally consistent with Azubike possessing contraband other than controlled substances. Thus, because the government failed to prove an essential element of the crimes charged by proof beyond a reasonable doubt, the Constitution mandates acquittal on both charges against him.
B. Willful Blindness Instruction
The district court’s failure to grant Azubike’s Rule 29 motion was exacerbated by its giving a willful blindness instruction. On this record, that instruction amounted to a bolstering of the government’s case on the issue of knowledge which I have just discussed.
We have held that “[a] willful-blindness instruction ‘is proper if a defendant claims a lack of knowledge, the facts suggest a conscious course of deliberate ignorance, and the instruction, taken as a whole, cannot be misunderstood as mandating an inference of knowledge.’ ” United States v. Keene, 341 F.3d 78, 83 (1st Cir.2003) (quoting United States v. Masse, 816 F.2d 805, 812 (1st Cir.1987)); see also United States v. Singh, 222 F.3d 6, 11 (1st Cir. 2000); United States v. Cunan, 152 F.3d 29, 39 (1st Cir.1998). Further, we have stressed that a willful blindness instruction “is proper when there is evidence to support the inference that the defendant was aware of a high probability of the exisfence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.” United States v. Brandon, 17 F.3d 409, 452 (1st Cir.1994) (emphasis added) (quoting United States v. Rivera, 944 F.2d 1563, 1571 (11th Cir. 1991)).
Most relevant to the present case, however, is our requirement that a willful blindness instruction should not be given unless the evidence of willful blindness is “separate and distinct” from the evidence of actual knowledge. United States v. Bilis, 170 F.3d 88, 93 (1st Cir.1999) (reiterating the rule in this circuit that “proof of direct knowledge [does not] preclude!] a willful blindness instruction that is otherwise appropriate: ‘As long as separate and distinct evidence supports a defendant’s deliberate avoidance of knowledge and the possibility exists that the jury does not credit the evidence of direct knowledge, a willful blindness instruction may be appropriate.’ ” (quoting Brandon, 17 F.3d at 452 n. 74) (emphasis added)). Such evidence does not exist in this record.
It was practically undisputed, and without serious question established, that the government proved that Azubike knew that some criminal activity was taking place and that he was an active participant. The majority relies on the phone conversation[7] between Mukasa and Azu *73 bike to support either an inference that Azubike knew the contents of the briefcase or one that Azubike engaged in a “conscious course of deliberate ignorance.” As I stated above, I believe that this evidence merely supports an inference that Azubike was involved with activities and actions aimed at avoiding detection by law enforcement. It is clear that Azubike was simply uncomfortable discussing the illegal activity on the phone. This evidence does not remotely suggest that Azubike was deliberately evading knowledge of the contents of the briefcase.
In addition, the instruction allowed the jury to rely on evidence that was not “separate and distinct” from the evidence presented by the government to establish Azubike’s actual knowledge of the contents of the briefcase. This instruction allowed the jury to speculate improperly that Mukasa’s conversation with Azubike created an inference of avoidance, when no such inference was permitted based on evidence barred by the “separate and distinct” rule. It also may have tipped the scales in favor of the government’s paper-thin case.
The majority states that I take the phrase “ ‘separate and distinct’ out of context and use it for a proposition which is not our law.” The majority then explains that “what the ‘separate and distinct’ requirement means is that when the evidence presented at trial provides the jury with only a binary choice between actual knowledge and innocence, a willful blindness instruction is inappropriate.”
I disagree that I am taking the phrase “separate and distinct” out of context in light of our pronouncements in Brandon and Bilis. In Brandon, a case involving a real estate broker’s scheme to obtain loan financing by fraudulently representing investors’ down payments, the court pointed to evidence of willful blindness “separate and distinct” from evidence it considered to show actual knowledge. 17 F.3d at 452 n. 74. This included evidence that the defendant “tried to avoid learning of particular buyers’ use of dischargeable mortgages for their down payments” and that the defendant told a prospective buyer that “he ‘didn’t want to know anything about [the second mortgages].’ ” Id. Similarly, in Bilis, where we considered whether a bartender was willfully blind to drug activity in his establishment, we pointed to evidence that the defendant purposely avoided learning about drug dealing taking place in his bar. 170 F.3d .at 93. We deemed this evidence “separate and distinct” from evidence demonstrating the defendant’s direct knowledge of drug activity in his bar. Id.
Even in United States v. Anthony, decided less than six months ago, our most recent case on point, and one where we cautioned against taking “too narrow a view” of the “separate and distinct” rule, 545 F.3d 60, 65 n. 7 (1st Cir.2008), we took the same analytical approach towards “separate and distinct” evidence that we applied in Bilis and Brandon. In Anthony, we reaffirmed that there was a “ ‘separate and distinct’ requirement,” id. (emphasis added), and proceeded to cite evidence going exclusively to willful blindness “separate and distinct” from evidence of actual knowledge to satisfy that requirement. Id. at 66 (pointing to “separate and distinct” evidence of willful blind *74 ness in tax evasion case where defendant, despite the fact that the law imposed a duty on him, did not consult either the most current version of the tax code or recent case law that may not have supported his argument).
It follows from Bilis, Brandon, and Anthony that the majority’s newly minted definition of what “separate and distinct” evidence means is at odds with how we have applied the requirement in this circuit. To be sure, I do not disagree with the language the majority borrows from the Seventh Circuit’s opinion in United States v. Carrillo for the majority’s definition. 435 F.3d 767, 784 (7th Cir.2006). It is perfectly sensible that a willful blindness instruction is inappropriate when a jury is faced with a binary choice between actual knowledge and complete innocence. Id. This rule protects against the possibility a jury will “convict a defendant on the impermissible ground that he should have known [an illegal act] was taking place” when the evidence only supports a finding of actual knowledge.[8] See Brandon, 17 F.3d at 452 (internal quotation marks omitted). My disagreement with the majority, however, is that its definition of “separate and distinct” reads out the “separate and distinct” evidentiary requirement altogether. Apparently, the majority reads our precedent to require only evidence of a “separate and distinct” mens rea for a willful blindness instruction when we have repeatedly referred to a requirement that the evidence itself be “separate and distinct” to support such an instruction.
Admittedly, there is some tension in our case law as we have remarked that “[e]vidence presented at trial may support either a finding of actual knowledge or a finding of willful blindness.” United States v. Griffin, 524 F.3d 71, 78 (1st Cir. 2008) (noting that failing to report sales income on tax returns could support an inference of deliberate avoidance or actual knowledge). The majority compares Griffin to our case and concludes that the extent to which evidence of willful blindness and actual knowledge overlap is immaterial. Griffin, however, sheds little light on the meaning of “separate and distinct” as presented in our case law, making no mention of this requirement. In Anthony, however, we do explore this requirement, in keeping with our line of cases.
I do not dispute that “some overlap” between the government’s evidence of actual knowledge and that of willful blindness is permissible, see Anthony, 545 F.3d at 65 n. 7; yet “complete overlap”[9] appears to be contrary to our earlier pronouncements regarding “separate and distinct” evidence in Bilis, 170 F.3d at 93, and Brandon, 17 F.3d at 452 n. 74.
The majority may be correct that the need for “separate and distinct” evidence of willful blindness is unwise and that a literal reading of the language that introduced this requirement into our case law makes our rule broader than necessary. *75 Yet, as explained above, subsequent to Brandon, we have adhered to this rule in Bilis and Anthony. As we have recently reiterated, the “interests of predictability are served by respecting our own prior language.” Awuah v. Coverall, N. Am., Inc., 554 F.3d 7, 11 (1st Cir.2009). Thus, I reject the majority’s not so subtle attempt to circumvent circuit precedent. I do not believe the majority’s definition of “separate and distinct” evidence is in keeping with our precedents in Brandon, Bilis, and Anthony, cases which have explicitly cited the “separate and distinct” rule. Brandon, 17 F.3d at 452 n. 74 (“As long as separate and distinct evidence supports a defendant’s deliberate avoidance of knowledge and the possibility exists that the jury does not credit the evidence of direct knowledge, a willful blindness instruction may be appropriate.”); see also Anthony, 545 F.3d at 65 (same) (quoting Brandon, 17 F.3d at 452 n. 74); Bilis, 170 F.3d at 93 (same) (quoting Brandon, 17 F.3d at 452 n. 74); id. (“Even without the testimony of these witnesses, separate and distinct evidence supported the government’s alternate theory of willful blindness.”).
The majority’s holding as to the sufficiency of the evidence supporting Azubike’s conviction and the appropriateness of a willful blindness instruction here runs counter to the proper administration of the law and should be strongly rejected.
I respectfully dissent.

. The government presented far more evidence in Azubike I as compared to the instant case. First, in Azubike I, Richard Mukasa, the original addressee of the briefcase with the hidden compartments containing heroin sent from Uganda, testified in significant detail about prior briefcases, the couriers, and of Roy Oki’s involvement and place in the conspiracy. Mukasa barely discusses these matters in the present case. Second, in Azubike I, Mukasa testified about unrecorded conversations between himself and John Kaggwa, a Ugandan lawyer who introduced Solomon Luí, a Sudanese businessman living in Uganda, to Mukasa. Solomon was the mastermind of the drug smuggling operation. In the present case, Mukasa did not testify about these unrecorded conversations. Third, in Azubike I, this court considered various unrecorded statements between Mukasa and co-conspirators in its sufficiency of the evidence analysis. These statements were not offered into evidence in the trial of the present case. Finally, State Trooper Coffey testified extensively in Azubike I, but not in the present trial.

. The relevant part of the conversation between Mukasa and Azubike is as follows:
H [Azubike]: I'm talking about him getting it Saturday night and giving it to me Sunday morning, morning, morning, 8 o’clock.
Cl [Mukasa]: Monday morning we cannot meet. It must be midday because it's not near here. He works uh like, uh uh, you know Swampscott? I don't think ... you don't live in this place. It's about an hour and a half drive from here.
H: My God.
Cl: Yah.
H: Oh, no.
CI: So if he works from Swampscott he has to get here by, if he leaves work at 8, by the time he gets here it's about 9:30 and then I get an arrangement. We can meet at like 12 noon. That’s if he works on Saturday.
H: Why 12 noon?
Cl: I, I, I don't want him to get involved in this stuff, so because, it's between me and you and the other guy, me and you ... I don’t want him to be involved.
H: I know, but what I am saying is this, is think about this
Cl: You know I ...
Cl: Hold on a minute
*73 H: ... And I'll come out
Cl: I don't want him to be suspicious, because he does not know much about this stuff. You know?
H: It's ok, it’s ok. You don't have to say that on the phone.
CI: If I, if I, yah. I try ...
H: Don’t say nothing more, don't say anything.

. Indeed, I believe this rule applies to the present case as the conversation between Mukasa and Azubike would not permit a rational jury to infer that Azubike deliberately avoided knowledge of the contents of the briefcase.

. The majority takes issue with my use of the term “complete overlap.” For the sake of clarity, I am merely noting that the sole evidence upon which the majority relies to show willful blindness (the phone conversation between Azubike and Mukasa) is also used to show actual knowledge — i.e. the evidence of willful blindness is not “separate and distinct” from the evidence of actual knowledge. By no means am I suggesting that the government's other evidence does not go exclusively to actual knowledge.